GEOFFREY HANSEN
Acting Federal Public Defender
RITA BOSWORTH
Assistant Federal Public Defender
450 Golden Gate Avenue
19th Floor
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant BRIAN SIMONESCHI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-11-736 SI |
| ) | |
| Plaintiff, ) | **DEFENDANT'S SENTENCING** |
| ) | **MEMORANDUM** |
| vs. ) | |
| ) | **Court: Judge Illston** |
| BRIAN SIMONESCHI, ) | **Hearing date: February 10, 2012,** |
| ) | **Time: 11:00 a.m.** |
| Defendant. ) | |
| _____) | |

## INTRODUCTION

Mr. Simoneschi comes before the Court to be sentenced on his conviction for failure to register as a sex offender. This federal conviction comes on the heels of a state conviction encompassing the same underlying conduct, for which Mr. Simoneschi received a sentence of 3 years. This is a rare case where the federal government decided to file charges even though the case had already been resolved on the state level. It is largely for that reason that Mr. Simoneschi implores the Court to impose a sentence that is below the advisory guidelines. The probation office recommends a sentence of 97 months, the low end of the guidelines. However, a modest variance from the guidelines, a sentence of 84 months (still seven full years), more appropriately takes into consideration all the factors of this case. Specifically, such a sentence accounts (in part) for the three-year sentence Mr. Simoneschi already served for the same

1  conduct, the developmental delays and difficulties he experienced throughout his childhood, his
2  commitment and dedication to serving the United States in the Army, his relatively minor
3  criminal history, and the specific facts and circumstances of this case, all of which will be
4  detailed below. In consideration of all the factors of sentencing, a sentence of seven years is the
5  reasonable sentence in this case.

**PROCEDURAL BACKGROUND**

7  In 2008, Mr. Simoneschi was convicted of a misdemeanor offense of annoying a victim
8  under the age of 18. He was sitting in a parked car touching himself while watching a Little
9  League game. PSR ¶ 30. As a result of that conviction, Mr. Simoneschi was sentenced to one
10 day in jail and a *lifetime* requirement to register as a sex offender. On June 11, 2009, Mr.
11 Simoneschi was charged in Contra Costa County with nine counts of lewd acts upon a minor.
12 PSR ¶ 33. In short, he was 26 years old, and he had consensual sex with a 14-year old. *Id.* He
13 was released from custody pending resolution of the matter. *Id.* In the time that he was out of
14 custody, he registered in at least three locations to attempt to abide by his registration
15 requirements. *Id.* He was ultimately convicted of all nine counts and sentenced to three years in
16 state prison. Once his sentence was complete, he was transferred to federal custody to face the
17 instant charges for failure to register as a sex offender. *Id.* He made his initial appearance in
18 federal court on June 20, 2011, and he pled guilty, pursuant to a written plea agreement, on
19 October 14, 2011. *Id.* ¶ 2. He did not file any motions or litigate the case in any way. In the
20 plea agreement, the parties agree that a sentence between 84-97 months is a reasonable sentence.
21 Mr. Simoneschi is scheduled to be sentenced on February 10, 2012, at 11:00 a.m.

**FACTUAL BACKGROUND AND HISTORY**

**1. Mr. Simoneschi's Upbringing, Family, and Social History**

24 Mr. Simoneschi's biological parents were very young when he was born and they were
25 both developmentally disabled. PSR ¶ 39. They were therefore unable to care for Mr.
26 Simoneschi or his siblings, and Mr. Simoneschi was placed in a foster home and eventually

SENTENCING MEMORANDUM
*U.S. v. Simoneschi*, 11-736 SI                 2

adopted by his foster parents. *Id.* As a baby, he was unable to speak or hear due to a blockage in his ear, this was eventually corrected when he was three years old. Declaration of Rita Bosworth ("Bosworth Decl.") Attach. B. He did not speak until he was four years old, and he had a speech impediment until he was seven. PSR ¶ 47. He also tested with an IQ that reflected borderline intelligence. *Id.* He had significant developmental delays throughout his childhood but he received much love and support from his adoptive family. *Id.*; PSR ¶ 40. In a letter to the Court, Mr. Simoneschi's sister, Angela, writes: "I remember he waddled in from the social workers car . . .dirty . . . wearing only a diaper . . . he was about three at the time . . . threw his arms around my dad who was sitting at the table. . . I knew at that moment. . . that was it." Bosworth Decl. Attach. C. She goes on to explain how it was clear that Mr. Simoneschi had been "neglected terribly" by his biological parents:

> Brian seemed to have suffered the most. So I guess you could say it has been a game of "catch up" all his life. . . .  Brian was not an average student. He was lower than average; yet not low enough to qualify for special programs. He always had to work harder and try longer to understand things. . . . All of his teachers would describe him as a hard worker, who tried hard. . . . He is sweet natured, and despite my parents efforts, he has remained behind the rest intellectually. . . hence. . . he has made some bad decisions in the last few years.

*Id.* As Brian's father puts it, "We loved and worked with him intensely throughout his formidable years hoping that our 'love' would overcome his developmental delays. We thought we had done so but it appears that we could not save him. Today he stands before you an adolescent teenager in a man's body." Bosworth Decl. Attach. B.

Though Mr. Simoneshi faced obstacles in his childhood, he maintains very strong support from his family and has made notable achievements in his life. He graduated from high school in 2000, and then he joined the United States Army, where he quickly became a Sergeant. PSR ¶¶ 49, 51. He completed boot camp in South Carolina and was subsequently stationed in Missouri, California, Korea, and North Carolina. *Id.* ¶ 40. He remained in the Army for over ten years until he was discharged due to this case in 2011. *Id.* He thrived in the Army and responded well to the structured military setting. *Id.* ¶ 47. He took computer classes at

SENTENCING MEMORANDUM
*U.S. v. Simoneschi*, 11-736 SI        3

community college in 2006, and he also has a number of skills from his training in the Army, including truck-driving and knowledge of mechanics. *Id.* ¶ 49; Bosworth Decl. Attach. C. When he is released from prison, his military training and education will give him the ability to find employment, and the support he receives from his family will give him the resources and the drive to stay focused.

**2. The offense conduct**

The offense conduct in this case stems from Mr. Simoneschi's contact with a minor, who was fourteen years old when he met her. There is no disagreement about the facts of the case. Mr. Simoneschi's wife left him in April of 2008. PSR ¶ 42. This was devastating to Mr. Simoneschi, as they had been dating since they were seniors in high school, and she wanted him to quit the military, a job that he loved. *Id.* His arrest in 2008 for annoying a minor, his very first conviction ever, occurred on the day that his wife left him. *Id.* In September of 2008, Mr. Simoneschi met the minor victim in this case on an internet chat site. *Id.* ¶ 8. They exchanged nude photographs of each other, and she would take her clothes off for him in front of a webcam. In her statement to the police, the minor victim "explained that it was her idea to take her clothes off and further stated that she did it a lot because she enjoyed the attention from men." USA0068. Mr. Simoneschi traveled to meet the minor victim, and they dated for a period of months and engaged in consensual sex. PSR ¶ 8. Mr. Simoneshi knew that the minor was only fourteen years old when they met, and he very wrongly pursued a relationship with her. However, in her statement, the minor stated that Mr. Simoneschi "never asked her to do anything sexual that she was uncomfortable with doing." USA0072. Based upon this conduct, Mr. Simoneschi was convicted in state court of nine counts of lewd acts upon a child, which is the conduct that constitutes the "enhancement for crime of violence" in the federal case and leads to the five-year mandatory minimum referred to in the PSR. PSR ¶¶ 1, 56.

It should not be overlooked that the actual offense to which Mr. Simoneschi pled guilty in this court is for failure to register as a sex offender, which, on its own, is not a crime of

SENTENCING MEMORANDUM
*U.S. v. Simoneschi*, 11-736 SI                    4

violence. Mr. Simoneschi was AWOL from the Army from February 2009 through May 2009, and during that time, he did not update his sex offender registration. PSR ¶¶ 6, 7. However, he did maintain his registration from 2008 to 2009, and he did register in at least three locations in 2009 *after* he had been arrested and charged in the state case and *after* he was AWOL. *Id.* ¶ 33. The guidelines for failure to register alone are 37 to 46 months. With the enhancement for the crime of violence, the guidelines become 97-104 months due to the 60 month mandatory consecutive sentence that goes along with the enhancement. In simplest terms, Mr. Simoneschi is receiving five years in federal court for conduct for which he served three years in state court, and the probation office is recommending an additional 37 months on top of that.

### 3. Mr. Simoneschi's Acceptance of Responsibility

Mr. Simoneschi has shown extraordinary acceptance of responsibility for his actions. Not only did he plead guilty without filing any motions or litigating the case in any way, he has shown true repentance for his actions. He wrote a candid letter to the Court, which is Attachment A to the declaration that accompanies this sentencing memorandum. In that letter, he shows that he has truly grasped what he did wrong and that he will not do it again. "Now I think back and realize when you're a teenager who thinks you know what you want, and that you can make your own decisions, but its not true. I feel like I took advantage of her even though it was consensual, I should've never gone along with it and I'm sorry. I can't believe I made that mistake, I was brought up better than that." Bosworth Decl. Attach. A. He shows serious remorse for the sadness this has caused his family. "I will never be in a situation with an underage girl ever again, and I will never put my family through this again." *Id.* His acceptance of responsibility is genuine and is evidence that he will not re-offend..

## SENTENCING RECOMMENDATION

**I. The Court has the Authority and the Responsibility to Exercise its Judgment and Discretion in Arriving at the Appropriate Sentence**

As the Court knows, *United States v. Booker*, 543 U.S. 220 (2005), directs the sentencing

SENTENCING MEMORANDUM
*U.S. v. Simoneschi*, 11-736 SI                  5

court to impose an appropriate sentence, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. Under the post-*Booker* discretionary sentencing regime, there is no longer any question that the advisory Guideline range is only one factor among several that this Court is required to consider in determining what constitutes a reasonable sentence. The Court is free to disagree with Guideline ranges and policy considerations. *See Kimbrough v. United States*, 128 S.Ct. 558, 57 (2007). While circuit courts of appeal may apply a presumption of reasonableness to sentences within the applicable Guidelines range, *Rita v. United States*, 127 S.Ct. 2456 (2007), the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id.* at 2465. Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *Gall v. United States*, 128 S.Ct. 586, 596 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 127 S.Ct. at 2469. Here, the Court should exercise its discretion and impose a sentence that is below the guideline range.

**II.     Consideration Of The Factors Set Forth In 3553(a) Also Supports The Imposition Of A Sentence Below The Mechanically Calculated Advisory Guideline Range**

In sentencing Mr. Simoneschi, this Court must consider *all* of the directives set forth in 18 U.S.C. section 3553(a); the sentencing guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- to afford adequate deterrence to criminal conduct;
- to protect the public from further crimes of the defendant; and
- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

SENTENCING MEMORANDUM
*U.S. v. Simoneschi*, 11-736 SI                              6

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs the court to consider a number of additional factors, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

In this case, in consideration of all of the factors under section 3553(a), the reasonable and appropriate sentence is 84 months of imprisonment. There are several reasons why such a sentence is warranted in this case. First, as set forth in this memorandum and the PSR, Mr. Simoneschi has already been convicted and served a sentence for the same conduct for which he is charged in this case. The state government analyzed his charges and determined that a sentence of three years was appropriate. Now, Mr. Simoneschi is in federal court going through the process again, only he is facing much stiffer penalties, including a mandatory five years for conduct on which he was already sentenced in state court. In addition to the agony of having to be charged, convicted, and sentenced twice for the same thing, Mr. Simoneschi is painfully aware that he is looking at more than double what he already served in state prison. Nevertheless, he did not litigate his case. He pled guilty, he accepted responsibility, and he has shown true remorse for his actions. A sentence of seven years in this case will mean a sentence of ten years in total for what he has done, which amounts to one-third of his life. Ten years is sufficient, and the PSR does not articulate any basis on which adding an additional thirteen months will further any goal of sentencing.

Second, the actual facts of the case mitigate the offense. With respect to the failure to register, it is clear that Mr. Simoneschi did in fact try to comply with his registration, indeed he registered multiple times in multiple locations. That he was out of compliance for four months was a result of him not wanting to go back to the Army rather than trying to hide from the sex registration list, and he did register again once he returned to the Army. With respect to the

enhancement for a crime of violence, there is no question that having sex with a fourteen year old is legally a crime of violence. However, it is significant that the contact was initiated by the minor, that they engaged only in consensual sex, and that the minor agreed that nothing they did ever made her uncomfortable. This was wrong, it was improper, it was illegal, but it must be viewed in context.

Third, Mr. Simoneschi's personal history and characteristics shed light on the case and mitigate in favor of a reduced sentence. The poor decisions that he made are no doubt related to his long history of developmental delays and borderline intelligence. Luckily, Mr. Simoneschi has a loving and supportive family who are aware of his limitations and who are willing to help him in every way they can. Mr. Simoneschi's personal history also reveals that he is not a serial sex addict or a pedophile. He has only had sex with two women in his life, his wife, and the minor in this case. According to his father, he is an "adolescent teenager in a man's body." This obviously does not excuse his conduct, but it does put what he did in context. Mr. Simoneschi knows that what he did was wrong, and he will not do it again, but there is no evidence to suggest that he is in any way a predator or acted with malice.

Finally, it is most important to remember that Mr. Simoneschi's sentence will not end once he is released from prison. Not only will he be on supervised release in the federal case for a period of five years, but he will continue to have a *lifetime* requirement to register as a sex offender. Mr. Simoneschi is thirty years old. That means that he will be under the supervision of the government for the better part of his life. He has shown that he has the skill, the support, and the will to succeed, but if he does not, there is no doubt that he will quickly be hauled back into court. Seven years in jail, plus the three that he has already done, is more than enough to satisfy the goals of sentencing, particularly given that his sentence will, in truth, never end. Mr. Simoneschi has done everything that has been asked of him, he has recognized his wrongdoings and he will pay dearly for his actions. He deserves finality, and he deserves the opportunity to make good on his promise to never come back.

SENTENCING MEMORANDUM
*U.S. v. Simoneschi*, 11-736 SI                 8

## CONCLUSION

For the reasons stated above, as well as any others the Court deems fair and just, Mr. Simoneschi respectfully requests that the Court impose a sentence of no more than 84 months.

Dated: February 3, 2012

                                            Respectfully submitted,

                                            GEOFFREY HANSEN
                                            Acting Federal Public Defender

                                                         /s/

                                            RITA BOSWORTH
                                            Assistant Federal Public Defender